ACCEPTED
03-14-00479-CV
4670942
THIRD COURT OF APPEALS
AUSTIN, TEXAS
3/27/2015 11:39:36 AM
JEFFREY D. KYLE
CLERK

Case No. 03-14-00479-CV

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
3/27/2015 11:39:36 AM
JEFFREY D. KYLE
Clerk

# IN THE THIRD COURT OF APPEALS

## KIM BLACKSTON CLOGSTON, Appellant

## vs.

## CURTIS P. CLOGSTON, Appellee

Appeal from Cause No. 05-D-540
From the 421st Judicial District Court
of Caldwell County, Texas

## APPELLANT'S BRIEF
## AND
## REQUEST FOR ORAL ARGUMENT

David K. Sergi
Texas Bar No. 18036000
DAVID K. SERGI &
ASSOCIATES
329 S Guadalupe
San Marcos, TX 78666
Tel: 512.392.5010
Fax: 512.392.5042
E-Mail: david@sergilaw.com
*Attorney for Appellant*

1

# IDENTITY OF PARTIES AND COUNSEL

**APPELLANT**
Kim Blackston Clogston

**APPELLEE**
Curtis P. Clogston

**PETITIONER'S COUNSEL AT TRIAL**
David K. Sergi
State Bar No. 18036000
P.O. Box 887, San Marcos, Texas 78666
Tel: (512)-392-5010
Fax: (512) 392-5042
E-Mail: david@sergilaw.com

**RESPONDENT'S ATTORNEY AT TRIAL**
Henry Newton Bell, III
State Bar No. 02095000
6000 N. Lamar Blvd, Ste. 210
Austin, Texas 78752
Tel: (512) 458-2233
Fax: (512) 458-2354

**APPELLANT'S ATTORNEY ON APPEAL**
David K. Sergi
State Bar No. 18036000
P.O. Box 887, San Marcos, Texas 78666
Tel: (512)-392-5010
Fax: (512) 392-5042
david@sergilaw.com

**APPELLEE'S ATTORNEY ON APPEAL**
Henry Newton Bell, III
State Bar No. 02095000
6000 N. Lamar Blvd, Ste. 210
Austin, Texas 78752
Tel: (512) 458-2233
Fax: (512) 458-2354

# TABLE OF CONTENTS

Identity of Parties...........................................................................................2

Table of Contents...........................................................................................3

Index of Authorities......................................................................................4

Statement of the Case...................................................................................5

Statement Regarding Oral Arguments.........................................................6

Issues Presented...........................................................................................6

Statement of the Facts...................................................................................7

Summary of the Argument............................................................................8

Standard of Review ......................................................................................9

Argument and Authorities............................................................................9

### Point of Error Number One

*Whether the Trial Court Erred in Dismissing Petitioner's Motion to Enforce based on Respondent's assertion the Motion was barred by limitations of TEX.FAM.CODE ANN Sec. 9.003(a) or Sec. 9.003 (b)*.............................9

Conclusion..................................................................................................12

Prayer.........................................................................................................12

Certificate of Service..................................................................................13

Certificate of Compliance...........................................................................14

APPENDIX:   1.  International Accounting Standards Board (IASB) Number 32

# INDEX OF AUTHORITIES

**Cases**

*Ford v. Ford*, 2000 WL 1262469 (not reported in S.W.3d (2000)....................11

**Statutes**

Texas Family Code Section 9.003...................................................5,8,10,12

Texas Family Code Sec. 9.003(a) ...............................................6,8,9,11,12

Texas Family Code Sec. 9.003(b)..................................................6, 8,9,12

Texas Tax Code Ann. Section 151.009.................................................10


Black's Law Dictionary (10th ed.2014).................................................10

## STATEMENT OF THE CASE

This is a direct appeal from civil cause number 05-D-540 in the 421st Judicial District of Caldwell County. The Appellant, Kim Blackston Clogston's Motion to Enforce was denied based on Appellee's argument that Appellant's Motion was to recover tangible property past the two-year statute of limitations. Appellant denies that her motion was barred by limitations on the grounds that the property sought to be enforced was intangible property and not subject to the two-year statute of limitations imposed by Texas Family Code Section 9.003.

## STATEMENT REGARDING ORAL ARGUMENT

Appellant requests oral argument in this case because he believes it will aid the Court in making its determination as to the issues presented herein.

## Issues Presented

### Point of Error Number One
*Whether the Trial Court Erred in Dismissing Petitioner's Motion to Enforce based on Respondent's assertion the Motion was barred by limitations of TEX.FAM.CODE ANN Sec. 9.003(a) or Sec. 9.003 (b).*

## STATEMENT OF FACTS

The Appellant and Appellee entered into an Agreed Final Decree of Divorce on October 18, 2006.[1] Appellant was awarded a website known as www.pfq.com.[2] Appellant was further awarded the business known as Physicians for Quality (PFQ) and the corporation entity known as PFQ, Inc.[3] Per the Agreed Final Decree of Divorce, the parties were both entitled to utilize any unused domain name variation or unused e-mail address associated with the site.[4] Appellee is listed as the administrator to the domain of pfq.com.[5]

Appellant attempted to make changes to the website www.pfq.com, but was denied the ability based on the fact that Appellee is the administrator and has denied Appellant the ability to make the necessary changes. Appellant then filed a Motion for Enforcement of Property Division and Application for Temporary Restraining Order, based W-13 Property to Wife regarding the website known as www.pfq.com wherein Appellee failed to execute all relevant documents necessary to transfer the World Wide Web domain www.pfq.com to Petitioner at a date and place certain.[6]

---

[1] R.R. Vol. I at 152-203
[2] R.R. Vol. I at 176:13-14
[3] R.R. Vol. I at 176: 5-12
[4] R.R. Vol. I at 176:13-14
[5] R.R. Vol. I at 212:12-17
[6] R.R. Vol. I at 212:25-27

7

Appellee argues that Appellant was not seeking an action to enforce, but rather requesting a substantial change from the decree originally entered in 2006.[7] Appellee further argues that Appellant's motion is untimely based on Texas Family Code Section 9.003(a) regarding enforcement of tangible property and Tex. Fam. Code Section 9.003(b) regarding the enforcement of division of future property not in existence at the time of the original decree.[8] Appellant denies this argument, as Appellant is seeking the right to control the *intangible* property that was awarded to her in 2006. Further, Appellant is not seeking the enforcement of tangible property, rather, she is seeking the enforcement of intangible property. Therefore, the trial court erred in dismissing Appellant's motion based on a flawed argument by Appellee.

## Summary of the Argument

The trial court abused its discretion in determining that the Appellant's motion was barred by Section 9.003 of the Texas Family Code because the website awarded to Appellant is not "tangible personal property" and Appellant was unaware of her inability to make changes to the website until 2012 when Appellee refused to remove himself as Administrator.

---

[7] R.R. Vol. I at 242:11-24
[8] R.R. Vol. I at 243-244

8

## Standard of Review

As to the first point of error, review by the appellate courts on an adverse ruling on *a de novo* basis.

On appeal, the appellate courts do not engage in their own factual review, but rather decide whether the trial court's conclusions were supported by the record. If the trial court's findings are supported by the record, appellate courts are not at liberty to disturb them, and on review, address only the question of whether the trial court improperly applied the law to the facts.

When the posture of a case does not present issues of pure fact, or of mixed questions of law and fact that turn on credibility or demeanor, and presents only questions of the validity of the trial court's legal rulings (as in the instant case), an appellate court's review is *de novo*.

## ARGUMENT AND AUTHORITIES

### Point of Error Number One
*Whether the Trial Court Erred in Dismissing Petitioner's Motion to Enforce based on Respondent's assertion the Motion was barred by limitations of TEX.FAM.CODE ANN Sec. 9.003(a) or Sec. 9.003 (b).*

**I. The website awarded to Appellant is not "tangible personal property"**

This appeals raises a fundamental question whose answer is obvious, is a website tangible personal property or not. The answer is that it is intangible as one cannot touch, feel or hold a website.

This case arises from an Agreed Final Decree of Divorce in the case below. The Appellant was awarded "W-13. The website known as www.pfq.com, except that both parties shall be entitled to utilize any unused domain name variation or unused e-mail address associated with the site."[9] Neither party has attempted to utilize an unused domain name variation or unused e-mail address with the site since the decree was granted. However, Appellant's attempt to control the website www.pfq.com that was awarded to her has been denied by Appellee who remains administrator of the domain, despite the award of that intangible property to the Appellant.

The trial court abused its discretion in determining that the Appellant's motion was barred by Section 9.003 of the Texas Family Code because the website awarded to Appellant is not "tangible personal property" and Appellant was unaware of her inability to make changes to the website until 2013 when Appellee refused to remove himself as Administrator.

"Tangible personal property" is not defined in the Family Code. The Tax Code defines it as "personal property that can be seen, weighed, measured, felt, or touched or that is perceptible to the senses in any other manner..." TEX.TAX CODE ANN. Section 151.009. Further, Black's Law Dictionary (10th ed.2014) defines "tangible property" as "Corporeal personal property of any kind; personal

---

[9] R.R. Vol. I at 176:13-14

property that can be seen, weighed, measured, felt, touched, or in any other way perceived by the senses, examples being furniture, cooking utensils, and books" " and defines "intangible property" as "Property that lacks a physical existence. • Examples include stock options and business goodwill." In addition even accountants agree that a web site is in tangible. *See* Standard Interpretations Committee (SIC), and were subsequently endorsed by the International Accounting Standards Board (IASB) Number 32 addressing the proper tax treatment of web site costs.

In *Ford v. Ford*, Appellant was awarded cash from a specific account in the decree but did not award Appellant any interest in the account itself. 2000 WL 1262469, (Not Reported in S.W.3d (2000)). However, cash is not tangible personal property, but rather, intangible property, and therefore the award was not subject to the two-year limitations period in Section 9.003(a). *Id.* Just like cash, an award of a website is not tangible property and therefore not subject to the two-year limitations period in Section 9.003(a).

Appellant acknowledges that the petition for Enforcement was filed after the second anniversary of the date the decree was signed.[10] However, the award of the website to Appellant was not tangible property. Because the website is not tangible personal property, but rather, intangible property, the enforcement of the

---

[10] R.R. Vol. I at 211-214

11

property was not subject to the two year limitations period in section 9.003(a) or (b). As a result, given that a website simply cannot be tangible property as contemplated by section 9.003 prong (a) or (b) simply do not apply and therefore this must be reversed and remanded for a hearing on appellant's motion to enforce.

## CONCLUSION

In light of the aforementioned discussion and analysis, it is clear that reversible error occurred and that reversal must be granted and the case rendered, or, the alternative that the case be remanded for a new trial.

## PRAYER FOR RELIEF

Appellant request that this Honorable Court grant a reversal and rendering of the verdict in Appellants favor as well as reversal and rendering of attorneys' fees awarded to Appellee, or in the alternative that the case be remanded.

Appellant further requests any other relief to which he may be legally entitled.

Respectfully submitted,

SERGI AND ASSOCIATES P.C.
329 South Guadalupe Street
San Marcos, Texas 78666
Tel: 512 392 5010
Fax: 512 392 5042
Email: David@Sergilaw.com

12

By: /s/ David K. Sergi
      David K. Sergi
      State Bar No. 18036000
      E-Mail: david@sergilaw.com
      Attorney for Kim Blackston Clogston

## CERTIFICATE OF SERVICE

I hereby certify that on the 27th day of March, 2015, a true and correct copy

of the foregoing brief was served via electronic filing on Henry Newton Bell, III.

      /s/ David K. Sergi
      David K. Sergi

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of the Texas Rules of Appellate Procedure 9.4(i)(2)(A) because:

   i. This brief contains __1794__ words, excluding the parts of the brief exempted by TEX.R.AP.P. 9.4(I)(1)

2. This brief complies with the typeface requirements of TEX.R.APP.P. 9.4(e) because:

   i. This brief has been prepared in a proportionally spaced typeface using Microsoft Work in 14 pt. Times New Roman.


SIC-32 — Intangible Assets – Web Site Costs

Quick Article Links ▾

## References

IAS 38 *Intangible Assets*

## History

| Date | Development | Comments |
|------|-------------|----------|
| 9 July 2001 | SIC-D32 *Intangible Assets — Web Site Costs* published | Comment deadline 10 September 2001 |
| 25 March 2002 | SIC-32 *Intangible Assets — Web Site Costs* issued | Effective 25 March 2002 |

## Summary of SIC-32

SIC-32 concludes that a website developed by an entity using internal expenditure, whether for internal or external access, is an internally generated intangible asset that is subject to the requirements of IAS 38 *Intangible Assets*.

SIC-32 identifies the following stages of website development:

- Planning
- Application and infrastructure development
- Graphical design development
- Content development
- Operating

SIC-32 addresses the appropriate accounting treatment for internal expenditure on each of those stages of development and operation:

a. A website arising from development should be recognised as an intangible asset if, and only if, in addition to complying with the general requirements described in IAS 38.21 for recognition and initial measurement, an enterprise can satisfy the requirements in IAS 38.57. In particular, an enterprise may be able to satisfy the requirement to demonstrate how its website will generate probable future economic benefits under IAS 38.57(d) when, for example, the website is capable of generating revenues, including direct revenues from enabling orders to be placed. An enterprise is not able to demonstrate how a website developed solely or primarily for promoting and advertising its own products and services will generate probable future economic benefits, and consequently all expenditure on developing such a website should be recognised as an expense when incurred.

b. Any internal expenditure on the development and operation of an enterprise's own website should be accounted for in accordance with IAS 38. The nature of each activity for which expenditure is incurred (eg training employees and maintaining the website) and the website's stage of development or post-development should be evaluated to determine the appropriate accounting treatment. For example:

- **Planning.** The planning stage is similar in nature to the research phase in IAS 38.54-.56. Expenditure incurred in this stage should be recognised as an expense when it is incurred.

- **Application and infrastructure development, graphical design and content development stages.** To the extent that content is developed for purposes other than to advertise and promote an enterprise's own products and services, are similar in nature to the development phase in IAS 38.57-.64. Expenditure incurred in these stages should be included in the cost of a website recognised as an intangible asset in accordance with this Interpretation when the expenditure can be directly attributed, or allocated on a reasonable and consistent basis, to preparing the website for its intended use. For example, expenditure on purchasing or creating content (other than content that advertises and promotes an enterprise's own products and services) specifically for a website, or expenditure to enable use of the content (such as a fee for acquiring a licence to reproduce) on the website, should be included in the cost of development when this condition is met. However, in accordance with IAS 38.71, expenditure on an intangible item that was initially recognised as an expense in previous financial statements should not be recognised as part of the cost of an intangible asset at a later date (for instance, when the costs of a copyright have been fully amortised, and the content is subsequently provided on a website).

- **Content development.** Expenditure incurred in the content development stage, to the extent that content is developed to advertise and promote an enterprise's own products and services (such as digital photographs of products), should be recognised as an expense when incurred in accordance with IAS 38.69(c). For example, when accounting for expenditure on professional services for taking digital photographs of an enterprise's own products and for enhancing their display, expenditure should be recognised as an expense as the professional services are received during the process, not when the digital photographs are displayed on the website.

- **Operating.** The operating stage begins once development of a website is complete. Expenditure incurred in this stage should be recognised as an expense when it is incurred unless it meets the criteria in IAS 38.18.

c. A website that is recognised as an intangible asset under SIC-32 should be measured after initial recognition by applying the requirements of IAS 38.72-.87. The best estimate of a website's useful life should be short.

Like 13  8+1 0

...erial on this website is © 2015 Deloitte Global Services Limited, or a member firm of Deloitte Touche Tohmatsu Limited, or one of their related entities. See ... for ...itional copyright and other legal information.
...tte refers to one or more of Deloitte Touche Tohmatsu Limited, a UK private company limited by guarantee ("DTTL"), its network of member firms, and their related ...ies. DTTL and each of its member firms are legally separate and independent entities. DTTL (also referred to as "Deloitte Global") does not provide services to clients.

Please see for a more detailed description of DTTL and its member firms.